**Kenneth SCHAAP and Marlene Schaap, Plaintiffs,**

**v.**

**EXECUTIVE INDUSTRIES, INC. and Motor Vacations Unlimited, Inc., Defendants.**

**No. 89 C 7421.**

United States District Court,
N.D. Illinois, E.D.

April 8, 1991.

See also 130 F.R.D. 384.

Daniel R. Formeller, Jacqueline A. Criswell, James K. Borcia, Tressler, Soderstrom, Maloney & Priess, Chicago, Ill., for plaintiffs.

Timothy G. Nickels, David A. Kanter, Aaron T. Shepley, Wildman, Harrold, Allen & Dixon, Chicago, Ill., for defendants.

## ORDER

BUA, District Judge.

Nearly one year after judgment was entered in this case, the litigants are still trying to stake out their rights and liabilities. The dispute centers around a defective motor home that was manufactured by Executive Industries, Inc. ("Executive"), and distributed by Motor Vacations Unlimited, Inc. ("Motor Vacations"). The purchasers of the motor home, Kenneth and Marlene Schaap, filed suit against those two companies to recover damages stemming from the defects. The case proceeded to trial and, on May 31, 1990, the jury returned a verdict in favor of plaintiffs. The parties then entered into settlement negotiations. Plaintiffs contend that a settlement was finally reached on December 18, 1990. When defendants refused to abide by the settlement agreement, plaintiffs filed a motion to enforce the agreement. The court referred that motion to Magistrate Judge Joan H. Lefkow. In a report and recommendation dated January 28, 1991, the magistrate judge recommended that this court grant plaintiffs' motion.

Before a court will enforce a settlement agreement, the traditional elements of a contract must be present. The parties will be bound by the agreement if "there is clearly an offer to compromise and acceptance and there is a meeting of the minds as to the terms of the agreement." *McAllister v. Hayes*, 165 Ill. App.3d 426, 427, 116 Ill.Dec. 481, 482, 519 N.E.2d 71, 72 (1988). Without establishing the existence of these elements, plaintiffs cannot prevail on their motion to enforce the settlement agreement. On the other hand, if a settlement has been reached, the terms of the agreement will be given full force and effect. *Id.* After all, settlement benefits not only the litigants, but the judicial system as well.

After reviewing defendants' objections to the magistrate judge's report and recommendation, the court concludes that a settlement was reached in this case. The settlement arose from the following sequence of events.

On October 16, 1990, after several months of negotiations, defendants extended a settlement proposal to plaintiffs. Plaintiffs were not amenable to all of the terms of this proposal, and settlement negotiations reached an impasse. On December 4, 1990, this court presided over a settlement conference, during which the parties found new inspiration to settle. The parties decided to revise the original settlement proposal. Following the conference, plaintiffs promptly sent a letter to defendants outlining their understanding of the proposed revisions. The letter specifically addressed four settlement terms that were discussed at the conference.

In a letter dated December 5, 1990, defendants responded to each of the four points set forth in plaintiffs' December 4 letter. For the most part, defendants agreed to the revisions. But defendants took issue with a proposed revision to the payment schedule. Plaintiffs had contemplated that the first monthly installment payment would be made on January 1, 1991, with the payments continuing until July 1, 1991. Defendants, in their December 5 letter, proposed that the first installment payment be made March 1, 1991 (rather than January 1) and that payments continue until August 1, 1991.

■ The magistrate judge characterized defendants' December 5 letter as the central offer ·for settlement. Defendants do not contest this finding; instead, they argue that plaintiffs did not effect a valid acceptance of the offer. The issue, then, is whether plaintiffs accepted defendants' offer.

Plaintiffs first responded to the offer on December 7, 1990. They indicated that defendants' proposal with respect to the payment schedule was unacceptable:

> Executive proposes that the December 1, 1990 payment of $20,000 be pushed back to March 1, 1991. The Schaaps have serious reservations about this additional concession in light of the uncertainty of Executive's financial situation. The Schaaps were willing to make the initial concession to push the December 1 payment back to January 1, 1991. *They are unwilling at this time to make any further concessions due to the delays they have already experienced.*
>
> . . . .
>
> We would appreciate Executive's reply either today or Monday, December 10, 1990 at the latest....

(Emphasis added.) This letter cannot be deemed an unequivocal acceptance of defendants' offer. Plaintiffs did not embrace the payment schedule referred to in the offer.[1] "An acceptance requiring any modification or change of terms constitutes a rejection of the original offer and becomes a counteroffer that must be accepted by the original offeror before a valid contract is formed." *Ebert v. Dr. Scholl's Foot Comfort Shops, Inc.*, 137 Ill.App.3d 550, 558, 92 Ill.Dec. 323, 330, 484 N.E.2d 1178, 1185 (1985); *see also Anand v. Marple*, 167 Ill.App.3d 918, 920, 118 Ill.Dec. 826, 828, 522 N.E.2d 281, 283 (1988). By proffering a payment schedule that was different from the one proposed by defendants, plaintiffs effectively rejected defendants' offer and presented a counteroffer of their own. Plaintiffs' counteroffer did not result in a binding agreement until accepted by defendants.

■ Defendants did not accept this counteroffer. Nonetheless, they did place their previous offer on the table again. On December 14, 1990, defendants contacted plaintiffs and indicated that the terms of the December 5 offer were still available, with the following modification to the payment schedule arrangement: defendants would tender a $15,000 payment on January 15, 1991, and the regular monthly installment payments would commence on March 15, 1991. On December 18, 1990, plaintiffs delivered a letter to defendants in which they accepted defendants' offer.[2] Plaintiffs also enclosed a draft agreement incorporating the terms of the offer.

Despite this letter from plaintiffs, defendants contend that plaintiffs never effected a valid acceptance. Defendants assert that the acceptance was invalid for two reasons: 1) the acceptance was conditional on the Schaaps review of the draft agreement; and 2) the draft agreement contained terms that were materially different from the offer. Neither argument is persuasive.

---

1. Based on the exhibits submitted by the parties, the court is unable to conclude that the payment schedule is an immaterial term of settlement. The parties certainly have not treated it as such. The payment schedule was one of only four terms highlighted in the relevant correspondence. Both sides repeatedly expressed concern as to whether defendants would be able to make payments according to the original payment schedule. A payment schedule that accommodates defendants' ability to pay, without substantially diminishing plaintiffs' interest in being paid as quickly as possible, is quite material to a fair settlement.

2. The letter, which was sent by counsel for plaintiffs, states as follows:

> Although the Schaaps have misgivings about whether Executive will continue to comply with the payment schedule once the motorhome has been sold, *they have decided to accept Executive's settlement proposal.* Enclosed is a draft Settlement Agreement which incorporates the new negotiated terms.
>
> Please call me as soon as you have had a chance to review this document because I am intending to Federal Express it to my clients today so that they can sign it tomorrow morning and return it by Thursday. Since I will be out-of-town from December 22 through December 30, I would like to finalize the documents before I leave. Can you get Executive's first check delivered by December 21, 1990?

(Emphasis added.)

728

Nothing in the December 18 letter demonstrates that the acceptance was conditional. Plaintiffs unambiguously accepted the offer and promised to forward a signed agreement promptly. The draft agreement, moreover, did not materially alter the terms of the initial proposal. Though not identical, the language used in the two agreements is substantially similar.

■ Defendants insist that the parties did not reach a binding agreement because they never executed the written document. Although the agreement was not formally executed, there is insufficient evidence demonstrating that the execution of a written document was a condition precedent to the settlement. Defendants contend that plaintiffs have demonstrated by their own conduct that such a condition precedent exists. Defendants point to one previous occasion in which plaintiffs refused to execute a settlement agreement after the parties had allegedly agreed upon the terms of the settlement. (Apparently, plaintiffs would not execute the agreement until they received certain financial data from defendants.) Plaintiffs' previous refusal to execute a written document does not, in and of itself, establish that formal execution is a condition precedent to a binding settlement agreement. Perhaps the earlier agreement would have been binding had defendants chosen to enforce it. From the evidence contained in the record, it is not entirely clear that the prior settlement failed solely because one party chose not to execute the pertinent documents. In short, the circumstances surrounding the parties' previous failure to settle do not conclusively prove that the parties intended a condition precedent.

■ Defendants also argue that the draft agreement contains evidence of the alleged condition precedent.[3] Specifically, defendants refer to paragraph 9 of the agreement, which states as follows:

This Settlement Agreement may be executed in counterparts and will take effect only when fully executed copies have been exchanged by and between the Schaaps and Executive and Motor Vacations. The effective date of this Settlement Agreement shall be the date stated below, even if the parties shall have executed the documents earlier or later.[4]

This paragraph does not support defendants' argument. If anything, paragraph 9 diminishes the significance of formal execution by providing that the effective date of the agreement is not affected by the date of execution. Paragraph 9 simply relates to the effective date of the agreement, not whether the parties ever reached an agreement in the first place. The evidence adduced by defendants is insufficient to demonstrate a condition precedent.

■ Defendants final argument in opposition to plaintiffs' motion is that Motor Vacations is not a party to the settlement.[5] Counsel for defendants states that Motor Vacations never authorized a settlement. The evidence on this point is conflicting. While the October 16 agreement and the draft agreement both identify Motor Vacations as a party to the settlement, the relevant correspondence suggests that counsel had only obtained Executive's authorization to settle. The court will not coerce a settlement in the face of such conflicting evidence. Absent Motor Vacations' explicit approval of the settlement offer, Motor Va-

**3.** Plaintiffs, in their response to defendants' written objections, contend that defendants waived this specific argument by failing to raise it before the magistrate judge. Ordinarily, a party is only entitled to a de novo review of the *"recommendations to which he objected,"* not arguments that were never raised. *Borden v. Secretary of Health and Human Servs.,* 836 F.2d 4, 6 (1st Cir.1987) (emphasis in original); *see also Paterson–Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990–91 (1st Cir.1988). At any rate, even if the issue was properly raised below, the court finds defendants' argument to be without merit.

**4.** This same language is also found in paragraph 12 of the October 16 settlement proposal.

**5.** Plaintiffs also oppose this argument on the ground that it was not raised before the magistrate judge. Indeed, Magistrate Judge Lefkow's report and recommendation did not make any reference to Motor Vacations. Yet, the binding effect of the settlement on Motor Vacations, a party defendant, is a dispositive issue. Therefore, defendants' final argument will be considered by this court notwithstanding their failure to raise the issue below.

cations cannot be subject to the agreement. *See McAllister*, 165 Ill.App.3d at 427–28, 116 Ill.Dec. at 482, 519 N.E.2d at 72 ("counsel must possess express consent or authorization to compromise a claim or settle a case"). Based on defense counsel's representation that Motor Vacations did not authorize a settlement, the court will not enforce the settlement agreement against Motor Vacations.

In sum, the court finds that defendant Executive made an offer of settlement that was accepted by plaintiffs. Finding that plaintiffs and Executive entered into a binding agreement, the court adopts the report and recommendation of the magistrate judge. Plaintiffs' motion to enforce the settlement agreement against Executive is granted. Executive is bound by the terms set forth in its December 5 offer, which incorporates the October 16 written agreement. The parties are directed to prepare the appropriate documents reflecting these terms. To the extent plaintiffs seek to enforce the settlement agreement against defendant Motor Vacations, the motion is denied.

IT IS SO ORDERED.